RECORD NO. 14-2135

In The

# United States Court of Appeals

### For The Fourth Circuit

## ESTATE OF WAYNE A. JONES BY ROBERT L. JONES AND BRUCE A. JONES, Administrators of the Estate of Wayne A. Jones,

*Plaintiff – Appellant*,

v.

## CITY OF MARTINSBURG, WEST VIRGINIA; PFC. ERIK HERB; PFC. DANIEL NORTH; PTLM. WILLIAM STAUBS; PTLM. PAUL LEHMAN; PFC. ERIC NEELY,

*Defendants – Appellants*,

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT MARTINSBURG

_____

## BRIEF OF APPELLANT

_____

Rocco J. DeLeonardis
CONSUMER LAW, PLLC
11480 Sunset Hills Road, Suite 120E
Reston, Virginia 20190
(703) 883-2020

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-2135        Caption: The Estate of Wayne A. Jones v. The City of Martinsburg, et al.,

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Estate of Wayne A. Jones
(name of party/amicus)

who is _____ appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent
    corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
    other publicly held entity?                                                  ☐ YES ☑ NO
    If yes, identify all such owners:

10/28/2013 SCC                      - 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                        ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ JohnPaul Callan                         Date:   December 19, 2014

Counsel for: The Estate of Wayne A. Jones

# CERTIFICATE OF SERVICE
****************************

I certify that on  December 19, 2014  the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ JohnPaul Callan                                     December 19, 2014
      (signature)                                              (date)

- 2 -

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT OF JURISDICTION ........................................................1

ISSUES PRESENTED FOR REVIEW ....................................................1

STATEMENT OF THE CASE................................................................2

    FACTS ........................................................................................2

    PROCEDURAL.........................................................................11

SUMMARY OF THE ARGUMENT .....................................................14

STANDARD OF REVIEW ..................................................................14

ARGUMENT ....................................................................................16

    I.     The District Court Erred in Deeming the Appellees' Requests for Admissions Admitted without Consideration of the Discretionary Factors Set Forth Under Fed. R. Civ. P. 36(b)..............19

          A.     The District Court Erred because it Failed to Treat Appellant's Filing of a Late Response and Objections to Appellees' Motion to Deem Requests for Admissions Admitted as a Motion for Relief under Federal Rule of Civil Procedure 36(b)................................................................20

          B.     The District Court Erred in Failing to Treat the Deemed Admissions as Withdrawn Under Federal Rule of Civil Procedure 36(b)...............................................................26

    II.    The District Court Erred in Granting Appellees' Summary Judgment Motion Based on Requests for Admissions Deemed Admitted in Error .............................................................32

A.    The District Court Erred in Granting Summary Judgment Dismissing Appellant's Section 1983 Claims Against the Officers for Use of Excessive Force ..........................................34

B.    The District Court Erred in Granting Summary Judgment Dismissing Appellant's Section 1983 Claims Against the City ........................................................................................35

C.    The District Court Erred in Granting Summary Judgment Dismissing Appellant's Negligence and Wrongful Death Claims Against the Officers ......................................................36

CONCLUSION ........................................................................36

REQUEST FOR ORAL ARGUMENT ....................................37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ........................15, 32

*Bailey v. Christian Broad. Network*,
483 F. App'x 808 (4th Cir. 2012)..................................................15, 20, 22, 25

*Bergemann v. United States*,
820 F.2d 1117 (10th Cir. 1987) .......................................................................31

*Blaylock v. City of Philadelphia*,
504 F.3d. 405 (3d Cir. 2007) ...........................................................................34

*Branch Banking & Trust Co. v. Deutz-Allis. Corp.*,
120 F.R.D. 655 (E.D.N.C. 1988) ....................................................................30

*Brook Vill. N. Assoc. v. Gen. Elec Co.*,
686 F.2d 66 (1st Cir. 1982).............................................................................30

*Clark v. Johnston*,
413 F. App'x 804 (6th Cir. 2011) ....................................................................25

*Conlon v. United States*,
474 F.3d 616 (9th Cir. 2007)...........................................................................22

*DeRyder v. Metro. Life Ins. Co.*,
206 Va. 602, 145 S.E.2d 177 (1965).................................................23, 24, 25

*Estate of Jones v. City of Martinsburg*,
2014 U.S. Dist. LEXIS 146622 (N.D. W. Va. Oct. 15, 2014) .........................2

*General Accident Fire & Life Assurance Corp v. Cohen*,
203 Va. 810, 127 S.E.2d 399 (1962)..............................................................24

*Graham v. Connor*,
    490 U.S. 386 (1989)......................................................................34

*Gutting v. Falstaff Brewing Corp.*,
    710 F.2d 1309 (8th Cir. 1983)...................................20, 21, 29, 30

*Gwynn v. City of Phila.*,
    719 F.3d 295 (3d Cir. 2013) .......................................................25

*Iko v. Shreve*,
    535 F.3d 225 (4th Cir. 2008) .....................................................34

*In re Harper*,
    No.ADV 12-80232-DD, 2013 WL 1909549
    (Bankr. D.S.C. May 7, 2013).....................................................30

*Johnson v. Jones*,
    515 U.S. 304 (1995)...........................................................27, 33

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
    106 F.3d 147 (6th Cir. 1997) ...............................................21, 25

*L.J. v. Wilbon*,
    633 F.3d 297 (4th Cir. 2011), *cert. denied*,
    132 S. Ct. 757, 181 L. Ed. 2d 482 (2011).............................15, 22

*Lockhart v. United Mine Workers of America 1974 Pension Trust*,
    5 F.3d 74 (4th Cir. 1993)......................................................14, 32

*Miller v. FDIC*,
    144 F.R.D. 316 (W.D. Va. 1992)..................................26, 29, 30

*Metpath, Inc. v. Modern Medicine*,
    1991 U.S. App. LEXIS 10796 (4th Cir. May 29, 1991)..................20, 21, 25

*Miller v. FDIC*,
    906 F.2d 972 (4th Cir. 1990)...............................................14, 32

*Nguyen v. CNA Corp.*,
    44 F.3d 234 (4th Cir. 1995)..................................................15, 32

*Perez v. Miami-Dade Cnty.*,
297 F.3d 1255 (11th Cir. 2002) ............................................................13, 25

*Precision Franchising, LLC v. Gatej*,
2012 U.S. Dist. LEXIS 175450 (E.D. Va. Dec. 11, 2012) ...............20, 21, 26

*Ramos v. Southern Maryland Elect.Co–op., Inc.*,
996 F.2d 52 (4th Cir. 1993)............................................................ 14-15, 32

*United States ex rel. Becker v. Westinghouse Savannah River Co.*,
305 F.3d 284 (4th Cir. 2002) .......................................................................15

*United States v. Hughes*,
606 F.3d 311 (6th Cir. 2010) .......................................................................34

*United States v. Petroff-Kline*,
557 F.3d 285 (6th Cir. 2009) .......................................................................29

*United States v. Shaffer Equip. Co.*,
11 F.3d 450 (4th Cir. 1993) .........................................................................29

*Waltner v. Aurora Loan Servs., L.L.C.*,
551 F. App'x 741 (5th Cir. 2013)................................................................25

*Webb v. Green Tree Servicing, LLC*,
No. CIV.A. ELH-11-2105, 2013 WL 5442423
(D. Md. Sept. 30, 2013) ..............................................................................29

*Westmoreland v. Triumph Motorcycle Corp.*,
71 F.R.D. 192 (D. Conn. 1976)...............................................................30, 31

*Witt v. W. Va. State Police*,
633 F.3d 272 (4th Cir. 2011) .........................................................27, 33, 34

*York v. City of Las Cruces*,
523 F.3d 1205 (10th Cir. 2008) ..................................................................33

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. IV ...............................................................36

U.S. CONST. amend. XIV .............................................................36

## STATUTES

28 U.S.C. § 1291 .........................................................................1

42 U.S.C. § 1331 .........................................................................1

42 U.S.C. § 1342 .........................................................................1

42 U.S.C. § 1983 ...................................................................*passim*

42 U.S.C. § 1988 .........................................................................1

## RULES

Fed. R. Civ. P. 36(a) ...............................................13, 15, 21, 25

Fed. R. Civ. P. 36(a)(3) ....................................................11, 12

Fed. R. Civ. P. 36(b) ...............................................................*passim*

Fed. R. Civ. P. 56(c) .............................................................15, 32

## OTHER AUTHORITY

4A Jeremy C. Moore et al., Moore's Federal Practice (2d ed. 1992) .......... 26-27, 30

## STATEMENT OF JURISDICTION

This appeal arises from a civil case pursuant to 42 U.S.C. §§ 1983, 1988, over which the District Court had jurisdiction pursuant to 42 U.S.C. §§ 1331, 1342 and under the doctrine of pendent jurisdiction. The Plaintiff (referred to herein as the "Estate of Wayne A. Jones," "Plaintiff," or "Appellant") noted its appeal on October 22, 2014 to the order of the District Court entered on October 15, 2014 granting summary judgment to the Defendants' (referred to collectively as the "Defendants," "Appellees," or "Police Officers," and referred to individually by their respective names) on all counts.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.  Whether the District Court erred in granting the Defendants' Second Motion to Deem Requests for Admissions as Admitted without consideration of the discretionary factors set forth under Fed. R. Civ. P. 36(b).

2.  Whether the District Court erred in granting Defendants' Summary Judgment on all counts based on the deemed admissions entered by the magistrate judge.

## STATEMENT OF THE CASE

### FACTS

This suit arises out of the death of Wayne A. Jones. *Estate of Jones v. City of Martinsburg*, 2014 U.S. Dist. LEXIS 146622 (N.D. W. Va. Oct. 15, 2014)

On March 13, 2013, Wayne A. Jones was shot twenty–two (22) times by five Police Officers employed by the City of Martinsburg, West Virginia (JA 207). Mr. Jones died immediately as a direct result of the shooting. (JA 206, JA 208)

According to the testimony of three of the Police Officers involved in the shooting, Mr. Jones was in possession of a knife (JA 272 at l. 8),(JA 366 at l. 2),(JA 442 at l. 9-13),(JA 398 at l. 5), had stabbed  officer Staub (JA 397 at l. 19), ignored numerous police officers' orders to drop the knife (JA 399 at l. 8), engaged in unruly acts *Id.*, refused to heed the Officer's instructions *Id.* and was a threat to all (5) Police Officers at the time of the shooting(JA 426 at l.14)(JA 375 at l.13)(JA 442 at l.9-19)(JA 386 at l.6).

In direct contradiction to the Defendants' version of the facts, the Plaintiff claims, as supported by the actual video dashcams and  by the record, that Mr. Jones was peacefully walking down the street beside the sidewalk.(JA 120 Ex.3 Lehman Vid. at 23:27:13-:58)  He observed the police car as he was walking and approached the crosswalk at S. Queen and Burke(*Id* at 23:28:08-:10), he  continued to walk down the crosswalk without incident or cause for arrest and crossed the

street (*Id* at :10-:13). Mr. Jones was then stopped by Officer Lehman, questioned, placed under immediate arrest without warning, detained and tased twice by Officer Lehman and North against proper police protocol and policy. (*Id* at 23:30:01)  Mr. Jones made no attempt to harm Officer Lehman during the initial encounter(JA 416 at l. 1-21), but instead removed himself from an unlawful arrest[1](JA 480)(JA 491 thru JA 495). Subsequently, after reaching the south end of the block, Mr. Jones attempted to surrender by raising his hands upon commands by Officer North at 145 S. Queen St("bookstore")(JA 382 at l. 13)[2].  Instead of allowing Mr. Jones to surrender, Officer Staub grabbed, choked(JA 279 Ex.3 Staub Vid. 00:00:23) and threw Jones down the steps(JA 396 at l. 3) onto the sidewalk(*Id* at l.4) where he was choked(*Id* at l. 10)(JA 279 Ex.3 Staub Vid. 00:00:23)  and

---

[1]    Through depositions, Plaintiff discovered that Officer Lehman had documented mental health issues when he was discharged from the military; experiencing problems adjusting to civilian life due to PTSD which he was suffering from.  Furthermore, Chief Miller testified that he was not aware of Lehman's PTSD.(JA 458 at l. 4-17)   Interestingly, Lehman was the one officer that cognitively knew the severity of the crime Jones had purportedly committed("jaywalking") punished by an administrative fine, yet Lehman was the only officer who emptied his service weapon magazine(JA 425, JA 426, JA 427, JA 428, JA 429) and could not remember where or how Mr. Jones was positioned on the ground during his deposition(JA 423 at l. 1-7) but he readily recalled a [sic]knife.(JA 423 at l. 13-17)

[2]    Note: In the *West Virginia State Police Report*, Officer Dillon's interview, with Officer North, immediately following the incident, was void of any comments regarding Mr. Jones "cussing" and only asking questions like "What did I do to you?" (emphasis added) (Supp. WVSPR_1 at 18) as he is being held at taser point by Officer North. (JA 279 *Ex.3*, Staub Vid. 00:00:11-13) Mr. Jones then raised his hands to surrender" (JA 279 Ex.3,  Staub Vid. 00:00:13-:17)

relentlessly beaten by four officers (JA 279 Ex.3 Neely Vid at 23:46:03).[3] During

the beating, Officer Staub's own knife fell out of his pocket (JA 403) while other

officers witnessed that knife "fall out".(JA 279 Ex.3 Neely Vid. 23:46:11)

After tasing Mr. Jones twice more, calling obscenities and telling him "I will

smoke your ass",(*Id.* 23:45:58) all five officers disengaged from Mr. Jones leaving

him unconscious, immobile and lying face down on the sidewalk with a broken

arm as the (5) officers formed a semi-circle around Mr. Jones(JA 424 at l.10) and,

after a short pause, commenced shooting him twenty-two (22) times with (16) of

the shots to Jones' back or backside(JA 345 *thru* JA 363).

Based on these directly opposite positions on some of the basic facts of this

case there cannot possibly be a fair reading of these two respective accounts which

could justify the conclusion that no issue of material fact is in dispute, except, of

course, if all of the Defendants' propounded requests for admissions were deemed

admitted by the Plaintiff. There are numerous deemed admissions which would, if

---

[3]     Officer Neely states "Stop or I'm going to tase you. Stop."(JA 279 Ex.3 at 23:45:59)(*Id.* Staub Vid. at 23:46:52)An unidentified Officer states  "That's right motherfucker".(emphasis added) (JA 279 Ex.3 Neely Vid. 23:46:03) An unidentified officer hits Jones.(*Id.*) Simultaneously, Jones gurgles and moans after being hit by one of the officers.(*Id.*) Jones is lying face down on the concrete in front of the bookstore; his legs are toes downward.(JA 279 Ex.3 Herb Vid. ). Neely deploys his taser on Jones which significantly effects Jones physically.(JA 279, Ex.3, Neely Vid. 23:46:06-:08)  In a twist, the District Court cites Patrolman Neely's deposition that "The taser had no effect", overlooking the clear evidentiary support on the dash-cam video depicting Jones screaming, moaning and gurgling as he is being tased and beaten.(JA 279 Ex.3 Neely Vid.  23:46:05-:13)

they were not deemed admitted, be enough by themselves to create a disputed issue of material fact to cause this case to continue beyond Summary Judgment and on to trial, ie, (1) whether Mr. Jones had a knife on his person, (2) whether Mr. Jones stabbed an officer with the purported knife, (3) whether Mr. Jones refused to drop the knife, (4) whether Mr. Jones was acting unruly (5) whether Mr. Jones was a threat to law enforcement and others immediately prior to being shot twenty-two times while laying prostrate and unconscious.

To deem these responses as admitted despite the clear and opposite position of the Plaintiff would be contrary to the well-established policy of this Court and other Courts of similar jurisdiction to hear cases on the merits and to completely ignore the District's Court's permissible discretion as set forth in *Rule 36(b)* and bring this case to an untimely end.

Additionally, to suggest that even if the Requests for Admissions were not deemed admitted there would be no dispute of material fact is a clearly indefensible position. Indeed, almost all of the critical material facts are disputed. There is an over-abundance of evidence in the record, regardless of whether the Requests for Admissions were deemed admitted or not, that either directly or indirectly contradicts or casts serious doubt upon the officers' version of the events which occurred on March 13, 2013, and fully corroborates the Plaintiff's story, including, but not limited to:

1. Neither the Police Department, nor the Police Officers were able to account for, or otherwise produce the knife purported by the Defendants to have been in Mr. Jones' possession at the time of the shooting[4]; (JA 556 at 8-10)

---

[4]     Plaintiff's Expert witness clearly articulates that there appears to be a segment in Herb's video, after the shooting has ended, where an officer reaches in his pants, pulls something out and walks over to the deceased body of Wayne Jones while crouching in a "catcher-like" position while other officers appear to gather around him.  Busnek, Plaintiff's Expert witness, further goes on to say that because of the totality of the circumstances, including the incident itself and other major anomalies outlined in his deposition and report; he cannot rule out that a knife has not been planted on or near the body of Wayne Jones(JA 527).  The W. Va. State Police Report identifies no less than (5) authentic discrepancies concerning the purported knives including:

**1.)** Officer Neely id's the knife in Jones' hand, describing it as being stuck up the sleeve, under the glove and poking through the palm of it.(*Supp.* WVSPR_1 at Page 20) The Autopsy Report identifies the gloves Jones was wearing and fails to document any uncharacteristic blemish or knife hole where a purported knife would poke or push through.(JA 209)

**2.)** Olack reports that Phelps advised that other officers removed two purported knives from underneath the body.(*Supp.* WVSPR_1, Page 46)

**3.)** Olack reported again that Phelps advised two purported knives were underneath the body were removed(*Id.* Page 38).

**4.)** Phelps signs an affidavit that he removed a black fixed blade knife from Jones' glove and tossed it.(*Supp.* WVSPR_2, Page 86)

**5.)** Officer Darby signs an affidavit that states he performed CPR on Jones and observed a knife near his right hand and Phelps moved the knife.(*Id.* Page 87)

**6.)** Officer Herb testifies during his deposition that Mr. Jones owned both of the knives.(JA 379 at 21, I.d 380 at l. 1-2)

**7.)** Officer Staub testified that he owned one of the purported knives.(JA 403, 404)

**8.)** During the *sidewalk beating*, an officer clearly yells "knife", another officer asks "where is it?" and yet another officer states:  *It fell out*.(emphasis added) right before the officers disengaged, screamed confusing commands and

2. When Mr. Jones stated "I have something", he was referring to a pair of scissors found in Jones back pocket during the Medical Examiner Autopsy;(JA 346)

3. Officer Staub admittedly had a "knife" leavet his possession while beating, tasing and choking Mr. Jones, and other officers witnessed that knife fall out;(JA 403), (JA 279 Ex.3 Neely Vid. 23:46:11), (JA 466)

4. The Medical Examiners Report and the West Virginia State Police Report showed that Mr. Jones was shot sixteen (16) times in the back and backside; (JA 345 *thru* JA 363)

5. Mr. Jones attempted to surrender at 145 S Queen St. (JA 382)(JA 384 at 17)[5]

---

almost simultaneously started firing their service weapons.(JA 279, Ex.3, Neely Vid. 23:46 :11)

**9.)** Both Officers Staub and North testified that neither saw a weapon in Jones' hands, on the landing, 'seconds' before a purported knife is produced and wielded after Jones is violently beaten, choked and tased – both stating that his hands were up and they did not see a knife.(JA 400)(JA 401 at l. 1-8)(JA 384 at l. 18-21)(JA 385, at l. 1-3)

[5] Officer North is clear in his deposition that he did not see a knife in Mr. Jones' hand as Jones had his hands raised on the landing of the steps.(JA 385 *at* l. 1-5)

Note: Sgt. Dillon of the Statement Police interviewed Patrolman North and states that "*Officer North advised that he observed the suspect run up a couple steps and corner himself on the "landing" of the front entrance to the Book Store. Patrolman North stated that he felt that this was a little odd because he had never seen anyone corner themselves like that before. Patrol North advised that he began ordering Jones to give up and get on the ground. Jones began asking "What he had done." Patrolman North advised Jones that they would sort it out and for the*

6. Mr. Jones was ultimately determined to have been shot 22 times at close range, by all 5 Police Officers while he was lying face down on the ground.(JA 348 *at* A(1))(JA 437 at 13)(JA 523 at 1-9)(JA 396 at 12)(JA 408)(JA Ex.3 Staub Vid. 23:45:40-:49)(JA 452 at 2-14)

7. The dashcam videos have, admittedly been altered by the West Virginia State Police.[6] (JA 455, 456 and 457)(JA 552 at 2)(JA 279 Ex.3 Neely Vid.

_____

*suspect to get on the ground.  North advised that Jones refused to get on the ground and raised his hands up." (Supp. WVSPR_1 at Page 18)*

Plaintiff contends that the "landing" at the "top" of the steps is small and not conducive for laying down or getting on the ground, and there is a clear pattern during this incident where officers bark off commands and simultaneously or within a millisecond afterward, usurp their own commands, refuse to allow Jones time to comply and then hasten the escalation of the force continuum.(JA 279 Ex.3 Staub Vid. 23:46:43)

Mr. Jones had just previously been tased twice, ran down the block, dazed and confused.  Patrolman North, negotiating with Mr. Jones, had him at taser point on the "landing" at the bookstore(*Id.* Staub Vid. 00:00:11-:13).  If the Officers stories were true, there is no need to grab, throw and choke Jones from the landing on the steps.

It is clear by Officer Staub's dashcam and his testimony; Patrolman North had Jones at taser point(JA 395 at 1-2), Jones' hands were raised for that purpose and clearly depicting surrender. Officer Staub, however, rushed into the incident and threw Jones off the steps;(JA 400) willfully engaging in excessive force to cause harm to Mr. Jones.

[6]     At least a 16 minute difference between Officer Lehman's dashcam and the other  (3) dashcams(JA 279 Ex.3 Lehman Vid., Neely Vid., Herb Vid., Staub Vid.) time-stamps speak for themselves. The Court should pay close attention to Lehman's dashcam  where it commences at approximately 11:30pm and the other dashcams gravitate around   11:46pm. The West Virginia State Police have admitted to alterations but minimize the severity of the forensic changes.  See footnote (2) in the District Court's Opinion and Order dated October 15, 2014.(JA 553)  Additionally, defendants have failed to explain why Neely's dashcam reads [23:45:55] when he exits his vehicle yet Staub's dashcam shows Neely exiting his

at 23:45:55 and *Id.* Staub Vid. at 23:46:47)(*Id.* Neely Vid at 23:45:18; *Id.*

Staub Vid. At 23:47:09)

8. The West Virginia State Police and the City of Martinsburg refused to

allow the Estate to forensically inspect the evidence, including the knife[7].

(JA 556)

---

vehicle at [23:46:47]. Clearly, there is a :52 second time-gap between those two dashcams that raises other material issues.

Neither Sgt Dillon  or Sgt. Olack's October 4th, 2013 testing of Officer Neely's video cam which concluded that "A minimal delay of less than 1/10[th] of a second was detected from the video to the audio during the test" is sufficient to explain the major anomalies in the time-gaps between Lehman, Neely and Staub's dash-cams when compared with one another. (*Supp.* WVSPR    _1      at      26) Furthermore, the District Court cites Chief Kevin Miller as justification for the authenticity of the dash-cams, yet counsel for defendants and Chief Miller state in Miller's deposition that they didn't know how or why the W. Va State Police conflated data from two separate dash-cams and Plaintiff would have to depose the W.Va State Police to inquire into the alterations.(JA 456 at 4-6)

The District Court Judge further opines "The content of the videos reinforce that the Estate's theory has *no evidentiary support*.(emphasis added)  Directly contradicting the Estate's allegations, videos contain images leading up to the shooting with no breaks in the timestamp" *(Id.)*

 In the alternative, the finding by the District Court does not suffice the potential time-gapped anomalies in all (4) dashcams regardless that the time differentiation is self-evident and material to the issue.  The District Court has been unable to reconcile this.(especially after the defendants finally admitted alterations were made only after turning the video over to Plaintiffs one year after the incident.)

[7]  Defendants refused to release the requested discovery material to Plaintiff(JA 137). In fact, Plaintiff filed a motion to compel discovery *Id.* had several hearings and was forced to go through protective order proceedings prior to the release of all discovery material, notwithstanding, defendants used every opportunity they could to thwart the production of documents.*Id.*

Defendants use a highly technical argument and filed a "Motion to Deem RFA's as Admitted " when  Plaintiff failed to timely respond  by two days ;

9. Neither the (5) officers nor anyone else was threatened by Mr. Jones after the officers disengaged and prior to shooting him because he was lying face down, unconscious, and immobile.(JA 279 Ex.3 Herb Vid. 23:50:40 to :53)(JA 519 at 1-10)

10. Prior to his Jones death, Officer Staub and (3) other officers excessively beat, tased and choked Mr. Jones.(JA 279 Ex.3 Neely Vid. 23:45:59 - :46:08)

11. After the first shot was fired all five officers continued to use excessive and deadly force to shoot Mr. Jones 21 additional times, the first shot having grazed Mr. Jones in the left side of his head from back to front – while his face was on the concrete.(JA 523 1-9)(JA 348) (JA 279 Ex.3 Staub Vid. 23:54:40-:49) (*Id.* Herb Vid. at 23:50:38-:56)

---

regardless that eleven months were remaining in discovery.(JA 39) Ironically,  the magistrate granted two orders on   April 16, 2014 – (1) The Judge ordered   the *admissions   deemed admitted*(JA 161) and, in a twist, (2) the Court granted the Plaintiff's Motion to Compel Discovery(JA 137) against defendants to produce the Autopsy Report, W. Va. State Police Report and other integral investigative items necessary to form its case.  (JA 208)(*Supp.* W. Va. State Police Report)

## PROCEDURAL

On June 13, 2013, the Estate of Wayne A. Jones filed its complaint against five individual Police Officers and the city of Martinsburg, West Virginia, Case 3:13-cv-00068-GMG-JES, United States District Court for the Northern District of West Virginia, Martinsburg Division.(Doc 1)[8] The Plaintiff alleged, *inter alia*, that the Martinsburg, West Virginia police officers' use of excessive force and unjustified deadly force caused the death of Wayne A. Jones in violation of 42 U.S.C. § 1983. (Doc 1)(JA 180) Plaintiffs also allege 42 U.S.C. § 1983 claims against the officers for violating the rights of Jones' family to maintain a relationship with him; West Virginia state claims of Negligence and Wrongful Death; and a 42 U.S.C. § 1983 violation of excessive force against the City of Martinsburg.

On December 23, 2013, Defendants filed a certificate of service indicating that it had served, inter alia, Requests for Admissions (the "RFAs") via a Combined Discovery package, to Plaintiff on December 23, 2013(JA 52). Allotting three days for mail delivery and extending the date two more days because the due date fell on a Saturday, the magistrate judge ruled after a hearing[Doc 73] in the April 16, 2014 Order(JA 161) that pursuant to Fed. R. Civ. P. 36(a)(3), the Plaintiff was deemed to have received the Requests for Admissions

---

[8]    Stipulated to Defendant's objections to leave this document out of the Appendix.  Alternatively, cited electronic record.

on December 28, 2013. *(Id.)* Based on the Magistrate's ruling, the Plaintiff had until January 27, 2014 *to file* responses to the requests for admissions in CM/ECF.*(Id.)* In reality, the Appellant's counsel did not actually receive the Requests for Admissions, until January 2, 2014(JA 67) and filed their formal responses to the Requests for Admissions on January 29, 2014(JA 161) after the Defendants filed their first Motion to Deem the Requests for Admissions as Admitted on January 27, 2014,*(Id.)* which was denied.(JA 97)

On February 27, 2014, defendants filed its Second Motion to Deem Request for Admissions as Admitted.(JA 100)

On March 11, 2014, the Plaintiff filed its Opposition to Defendants Second Motion to Deem Request for Admissions as Admitted(JA 122) and Defendants responded with an Opposition brief.(JA 132) Subsequently, Plaintiffs filed a Motion to Compel Discovery on March 18, 2014.(JA 137)

On April 16, 2014, the magistrate judge granted the Defendants Second Motion to Deem the Requests for Admissions as admitted after Plaintiffs were found to have filed the response two days late per Fed. R. Civ. P. 36(a)(3) in CM/ECF(JA 161). The Court then, acknowledging Plaintiff's written response

12

served to Defendants on January 6, 2013 by letter[Doc 66-1, Ex. E, 501][9], also granted Plaintiff's Motion to Compel Discovery on April 16, 2014(JA 137)[10]

On August 8, 2014, the Defendants filed a Motion for Summary Judgment and accompanying Memorandum (Docs 119)(JA 239). The Plaintiff filed a Response in Opposition to the Defendants' Motion for Summary Judgment and accompanying Memorandum with Exhibits on August, 27, 2014.(JA 319) Defendants replied on September 3, 2014.(JA 528)

Basing its ruling on the conclusory effect of Plaintiff's deemed admissions under Fed. R. Civ. P. 36(a), the District Court granted all counts of the Defendants' Motion for Summary Judgment by way of an Order dated October 15, 2014. (JA 552) This appeal followed.

The central issue of this appeal is whether the District Court erred in deeming the Appellees' requests for admissions admitted without consideration of the discretionary factors set forth under Fed. R. Civ. P. 36(b).

---

[9]     Cited electronic record. Stipulated to exclusion.
[10]    Similarly, in the 11th Circuit, when the *Perez Court* reasoned "When a party like **Perez**, however, uses the rule to harass the other side or, as in this case, with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer), the rule's time-saving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable time. *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255 (11th Cir. 2002)

## SUMMARY OF THE ARGUMENT

Pursuant to Fed. R. Civ. P. 36(b), a "matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." "The court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

The principal issue in this case is whether the District Court abused its discretion by failing to treat the Estate's Response to Defendants' Request for Admissions, which was filed in CM/ECF on January 29, 2014, only two days late, as being timely filed or as a withdrawal of the deemed admissions, without consideration of the discretionary factors set forth under Fed. R. Civ. P. 36(b). The Requests for Admissions being deemed admitted was the primary basis for granting summary judgment.

## STANDARD OF REVIEW

The District Court's grant of summary judgment is reviewed in this Court de novo. *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 (4th Cir. 1993); *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir. 1990). In conducting this review, this Court is to also apply the same legal standards as the District Court. *Ramos v. Southern Maryland Elect.Co–op., Inc.*, 996 F.2d 52, 53

(4th Cir. 1993).   The District Court should only grant a motion for summary judgment where there is no genuine dispute as to an issue of material fact, such that the moving party is entitled to summary judgment as a matter of law.  *See Fed. R. Civ. P. 56(c)*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Nguyen v. CNA Corp*., 44 F.3d 234, 236-37 (4th Cir. 1995).

In reviewing a discovery order, this Court affords "…..substantial discretion to a District Court in managing discovery and review discovery rulings only for abuse of that discretion." *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). "A district court abuses its discretion only where it has acted arbitrarily or irrationally, has failed to consider judicially recognized factors constraining its exercise of discretion, or when it has relied on erroneous factual or legal premises." *L.J. v. Wilbon*, 633 F.3d 297, 304 (4th Cir. 2011) (internal quotation marks and alterations omitted), *cert. denied*, U.S., 132 S. Ct. 757, 181 L. Ed. 2d 482 (2011); *see also*, *Bailey v. Christian Broad. Network*, 483 F. App'x 808, 809-10 (4th Cir. 2012) (unpublished) (briefly discussing *Rules 36(a)-(b)*).

15

# ARGUMENT

The District Court's rulings that the matters raised in the Requests for Admissions were conclusively established and, thus, that summary judgment was warranted, were erroneous for the following reasons:

- Appellant's Responses to the RFAs were filed only two days late in CM/ECF System and did not prejudice the Defendants/Appellees in any way whatsoever;

- Appellant was substantially prejudiced by the deemed admissions because Appellant was unable to present its case on the merits and was deemed to have admitted numerous material issues of fact which were subsequently denied in the Plaintiffs actual responses, including several independently dispositive material facts such as: whether Mr. Jones had a knife at the time of the shooting, whether Mr. Jones stabbed an officer, whether Mr. Jones posed a threat to the officers at the time of the shooting, etc.;

- The District Court not only failed to exercise its discretion under Fed. R. Civ. P. 36(b) against the Appellant, but failed to even consider whether permitting withdrawal or amendment of the Appellant's deemed admissions would promote the presentation of the merits of the action or prejudice the Appellees in maintaining or defending the action on the merits;

- If the admissions are withdrawn, amended or otherwise denied, there are clearly a number of issues of material fact which are in dispute.

Because the record shows that the District Court's decision was based substantially, if not exclusively, upon the conclusory effect of the Appellant's deemed admissions, this Court's reversal of the District Court's failure to deem the admissions withdrawn or amended would necessarily require a reversal of the District Court's summary judgment order.

As will be detailed below, the admissions at issue in this case, which concern whether the  police officers used excessive force in the killing of Wayne Jones, include (1) whether Mr. Jones had a knife on his person, (2) whether Mr. Jones admitted he had a knife on his person, (3) whether the officers order Mr. Jones to drop the purported knife, (4) whether Jones stabbed an officer with the purported knife, (5) whether Mr. Jones refused to drop the knife, (6)  whether Mr. Jones attempted to evade arrest and engage in unruly actions and (7) whether Mr. Jones was a dangerous threat to law enforcement or others immediately prior to being shot twenty-two times by the police, and (8) whether the threat towards the officers and others was actual, authentic or contrived.

These foregoing deemed admissions substantially controlled the District Court's determination that there was no disputed issue of material fact.(JA 564)

The record shows that there is evidence to contradict each and every one of the foregoing contentions, all of which were deemed admitted by the Court's ruling,  e.g. (1) no knife  (or any weapon for that matter) was produced by the Appellees(JA 556); (2) dashcam videos from the police cars clearly indicate that Mr. Jones did not engage in unruly actions or efforts prior to or leading up to his death; (JA 279, Ex.3 Lehman Vid., *Id.* Neely Vid., *Id.* Staub Vid., *Id.* Herb Vid.) (3) Mr. Jones was lying prostrate on the sidewalk with a broken arm, surrounded by all five defendants when he was shot and killed;(JA 279, Herb Vid. 23:50:38-

:56)(JA 408 at 3-4)(JA 349) (4) the autopsy evidence corroborates that Jones was shot in the back and backside of his body 16 times.(JA 348 thru 356) (5) autopsy report and depositions  demonstrate that the initial gunshot grazed  Mr. Jones through the left temporal lobe11;(JA 348)(JA 452 at 3-14)(JA 279, Ex.3, Staub Vid. 23:54:40-49) (6) Officer Staub's deposition corroborates that Mr. Jones was lying face down at the time of the shooting.(JA 396 at l. 12-13)(JA 408 at l. 3-4)  and (7) Officer Staub's and Herb's dashcam corroborates that Mr. Jones was not moving prior to being shot by Officer Neely[12].

All of this evidence, plus other factual issues not raised here for the sake of brevity, demonstrates that Mr. Jones did not pose a threat to the police or others at the time of the shooting and was not acting unruly and did not otherwise justify the Police Officers' use of excessive and deadly force.

---

[11]     Medical Examiner Report("MER")indicates Mr. Jones was, in fact, laying face down. Neely was positioned on the left most side of the semi-circle.  In order for Neely to graze Jones' temporal and have the *bullet fragment*(emphasis added) lodged in the front of left eye, his head would have been facing the concrete; or else the initial shot would have either grazed another side of Jones' head or gone through the skull.
        Defendants fact-pattern which frames Jones on his right-side and attempting *to try to start to attempt to get up(emphasis added)* and attack an officer is inconsistent with the MER at (JA 348 at l. A.) and Patrolman Herb's dashcam(JA 279 Ex.3 Herb Vid.  23:50:38-:57)
[12]     Note:Officer Staub said "We all got back, we all got back, and he still had the 'fuckin' knife in his hand.  *AND HE WASN'T FUCKIN DOING NOTHING. SO I THINK NEELY WAS THE FIRST TO SHOOT HIM.*(emphasis added)(JA 279, Ex.3, Staub Vid. 23:54:40-:49)  and Officer Herb's dashcam at (JA 279, Herbs Vid. 23:50:38-:57)

In light of the disputed issues of material fact and the court's failure to consider the discretionary factors listed under Fed. R. Civ. P. 36(b), the District Court's order entering summary judgment should be reversed and remanded so that this matter may proceed to trial and be heard on the merits.

**I.     The District Court Erred in Deeming the Appellees' Requests for Admissions Admitted without Consideration of the Discretionary Factors Set Forth Under Fed. R. Civ. P. 36(b).**

Fed. R. Civ. P. 36(b) provides that "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  Fed. R. Civ. P. 36(b) "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice."  Fed. R. Civ. P. 36(b) 1970 Advisory Comm. Note.

In this case, the District Court was obliged to consider whether filing the Requests for Admissions two days late should be deemed a withdrawal of the deemed admissions and that such withdrawal would promote the presentation of the Plaintiff's case on the merits and not cause prejudice to the Defendants. The supporting case law indicates that the Plaintiff's late response to the RFAs and objections to the Defendants' motions to deem the RFAs admitted were effectively

a motion for relief under Rule 36(b). Furthermore, if the District Court had considered the Rule 36(b) factors, it would have been obliged, as a matter of law, to allow the withdrawal of the admissions.

### A. The District Court Erred because it Failed to Treat Appellant's Filing of a Late Response and Objections to Appellees' Motion to Deem Requests for Admissions Admitted as a Motion for Relief under Federal Rule of Civil Procedure 36(b).

A number of courts, including this Court, have held that a late response to a request for admission, a motion for an extension of time to file a response or a motion to deem admissions as filed timely, are effectively motions for relief under Rule 36(b). See *Bailey v. Christian Broad. Network*, 483 F. App'x 808, 810 (4th Cir. 2012) (stating that "the motion for extension of time to respond to RFAs was, in essence, a motion to withdraw deemed admissions"); see also, *Metpath, Inc. v. Modern Medicine*, 1991 U.S. App. LEXIS 10796 (4th Cir. May 29, 1991) (citing *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312-1313 (8th Cir. 1983)).

In *Precision Franchising, LLC v. Gatej*, the Eastern District of Virginia interpreted this Court's opinion in *Metpath, Inc. v. Modern Medicine* as "approv[ing] of the position taken by a number of other circuit courts that 'a late response was the equivalent of a motion to withdraw or amend a response, and that amendment could be allowed when the opposing party suffered no prejudice by the amendment.'" *Precision Franchising, LLC v. Gatej*, 2012 U.S. Dist. LEXIS

20

175450, at 13 (E.D. Va. Dec. 11, 2012) (citing *Metpath, Inc. v. Modern Medicine*, 934 F.2d 319 [published in full-text format at 1991 U.S. App. LEXIS 10796 at *6] (4th Cir. 1991). In applying this Court's decision in *Metpath*, the Eastern District of Virginia concluded that it was required to deem the late filing of a response to requests for admissions as a motion to withdraw or amend admissions. *Id.* at 14. The *Precision* court further held that it was obliged to discuss and assess whether the Rule 36(b) factors justified allowing the admissions to be amended or withdrawn. *Id.* at 14.

Like in *Precision Franchising, LLC*, in this case, the Plaintiff filed its response to the RFAs untimely (two days late). Under *Metpath, Inc. v. Modern Medicine* and *Gutting v. Falstaff Brewing Corp.*, the Plaintiff's late response and two objections which requested that the late response be treated as timely, obliged the District Court, as well as the District Court magistrate, to treat the matter as a motion to withdraw or amend the admissions under Rule 36(b)[13]. Therefore, the magistrate's decision to consider only those factors set forth in Rule 36(a), without

---

[13]    Plaintiff specifically suggests the dual responses in opposition in the instant case to Defendants two motions to deem admitted the admissions should be considered Plaintiff's Motion to withdraw and/or amend under Rule 36(b) *Consider Kerry Steel, Inc. v. Paragon Indus., Inc*., 106 F.3d 147, 153-154 (6th Cir. 1997) (Although Paragon did not file a written motion to withdraw this admission under Rule 36(b), the court found that statements made by defense counsel were equivalent to a motion to withdraw or amend—and on this basis the court deemed the admission withdrawn. In doing so, the court indicated it was reluctant to assign talismanic significance to the attorney's failure to use the phrase "I move.")

21

making any legal or factual findings or any reference at all to Rule 36(b), constituted an abuse of discretion because the court failed to "consider judicially recognized factors constraining its exercise of discretion" and relied on the erroneous legal premise that it was not obligated to consider the factors established by Rule 36(b).

In *Bailey v. Christian Broad. Network*, this Court reversed a lower court's denial of an appellant's motion for an extension of time in which to file a response to requests for admissions, 483 F. App'x 808 (4th Cir. 2012). In *Bailey*, the Court reasoned that because the district court failed to consider or set forth any findings regarding the discretionary factors listed in Rule 36(b), the district court had relied upon an erroneous legal premise. Specifically, this Court held that:

> *"The magistrate judge's holding appears to have been based on his conclusion that he was bound by the language of Rule 36(a), rather than any consideration of the discretionary factors established by Rule 36(b). However, as the motion for extension of time to respond to RFAs was, in essence, a motion to withdraw deemed admissions, the Rule 36(b) factors were integral to the court's determination."*

*Bailey v. Christian Broad Network*, 483 F. App'x 808, 810 (4th Cir. 2012).

In addition, the *Bailey* Court went a step further, explicitly stating that "failure to consider the *Rule 36(b)* factors in ruling on a motion to file RFAs out of time constitutes an abuse of discretion." 483 F. App'x 808, 810 (citing *Wilbon*, 633 F.3d at 304; *Conlon v. United States*, 474 F.3d 616, 625 (9th Cir. 2007)).

22

The position of this Court in all significant instances has been to promote resolving cases on the merits rather than on a procedural technicality, as the Defendants are trying to do in the instant case. This policy would necessarily include the consideration of the discretionary factors in *Rule 36(b)*, whether the party being charged with the deemed admissions specifically moved the Court to consider *Rule 36(b)* or not, especially if there is enough evidence on the record showing that the party's deemed admissions were inadvertent made and subsequently denied by filing the correct responses, and also by objecting to the admissions being deemed admitted as the Plaintiff has done here.

The overall policy of this Court to hear cases on the merits is supported by West Virginia's closest sister state sharing a common border, the Commonwealth of Virginia. The Supreme Court of Virginia has a well settled policy that deemed admissions by operation of law rather than by actual admissions or subsequently denied admissions in response to Requests for Admissions should not be used as a means to decide an entire case. In *DeRyder v. Metro. Life Ins. Co.*, 206 Va. 602, 611-12, 145 S.E.2d 177, 183-84 (1965), the Court of Appeals of Virginia refused to strike the Defendants answers when it failed to adequately respond to Requests for Admissions. The Defendant filed responses made under oath which admitted the truth of some of the statements, but as to a number of other statements the reply was in these words: "The fact requested to be admitted is not within the knowledge

of the defendant[14]." The Plaintiff in *DeRyder* subsequently filed a motion to strike those answers and requested those responses to be deemed admitted even though the facts were not within the Defendants' knowledge. *Citing General Accident Fire & Life Assurance Corp v. Cohen*, 203 Va. 810, 127 S.E.2d 399, 401, the *DeRyder* Court concluded that:

> "*The procedure dealing with requests for admissions is not to be used to cover the entire case and every item of evidence,* **but to force admissions of facts about which there is no real dispute.** *The purpose of statutes and rules of procedure providing for admissions is to eliminate those facts which will not be disputed at the trial or about which there is no real controversy, to relieve the parties of the burden of proving them, to expedite the trial, and to facilitate a proper decision on the merits.*"(emphasis added)

It would be impossible to conclude by any judicial standard that the deemed admissions were properly used to grant Summary Judgment in this case if the standard in the *DeRyder* Court, as well as the standard used in other sister Courts, was used by the District Court in the instant case.

In the instant case, the Plaintiffs diligently filed its response to the RFAs on January 29, 2014, just two days after Plaintiff received the Defendants' first Motion to deem the Requests for Admissions as Admitted and made its position on

---

[14]     Additionally, the *DeRyder* Court further concluded "We are convinced that it would have worked an undue hardship upon defendant to have required it to obtain the information it needed in order to admit or deny the requests.......In effect, plaintiff was asking defendant to prove her case rather than to eliminate those facts which would not be disputed at the trial. Under the facts and circumstances of this case, defendant's response was sufficient."

the inadvertently deemed admitted responses perfectly clear. The Plaintiff also filed two objections to the Defendants' two motions to deem the RFAs admitted. In ruling on both objections, the District Court magistrate's discussion and opinion relied solely on the factors set forth under Rule 36(a). Indeed, there is no mention of Rule 36(b), either by the magistrate or by the judge, anywhere in the order deeming the RFAs admitted or in the order granting summary judgment.

Like in *Bailey*, where the Appellant filed both a late response to the requests for admissions and a motion to allow the response as timely, here the Plaintiff filed a late response and an objection to Appellee's motion to deem the requests admitted, arguing that the responses should be treated as timely. Therefore, as in *Bailey*, the District Court was obliged to at least consider whether relief should be afforded to the Appellant under Rule 36(b).

Applying the standards established in *Bailey v. Christian Broad. Network* and *Metpath, Inc. v. Modern Medicine*, and *DeRyder* v. *Metropolitan Life* as well as numerous other sister courts[15], the District Court's decision to deem the Appellee's Requests for Admissions as admitted without any consideration of the factors listed

---

[15]    *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255 (11th Cir. 2002); *Clark v. Johnston*, 413 F. App'x 804 (6th Cir. 2011); *Gwynn v. City of Phila.*, 719 F.3d 295 (3d Cir. 2013); *Waltner v. Aurora Loan Servs., L.L.C.*, 551 F. App'x 741 (5th Cir. 2013); *Consider Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153-154 (6th Cir. 1997)

under Rule 36(b) should be reversed, and this matter should be remanded to district court for further consideration.

**B.    The District Court Erred in Failing to Treat the Deemed Admissions as Withdrawn Under Federal Rule of Civil Procedure 36(b).**

As previously noted, Fed. R. Civ. P. 36(b) provides that "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."   Thus, whether a court should permit withdrawal or amendment of an admission under Rule 36 is based on a two prong analysis: (1) whether such withdrawal or amendment would promote the presentation of the merits of the action and (2) whether such withdrawal or admission would prejudice the requesting party in maintaining or defending the action on the merits.

In assessing whether withdrawal and amendment would promote the presentation of the merits of the action, courts look to whether the proposed amendments "will facilitate the development of the case in reaching the truth, as in those cases where a party's admission[s] are inadvertently made." *Precision Franchising, LLC v. Gatej*, 2012 U.S. Dist. LEXIS 175450, 14-15 (citing *McClanahan v. Aetna Life Ins. Co.*, 144 F.R.D. 316, 320 (W.D. Va. 1992); *McClanahan*, 144 F.R.D. at 320 (quoting 4A Jeremy C. Moore et al., Moore's

Federal Practice para. 36.08 (2d ed. 1992)); *see also Adventis*, 2006 U.S. Dist. LEXIS 68332, 2006 WL 2631760, at *2(reviewing cases).  "Courts have found that this prong is met when, as here, the deemed admissions effectively resolve the case and thus upholding the admissions would eliminate any need for a presentation on the merits." *Id.* at 15-16.

In the instant case, the District Court's summary judgment opinion rejected each and every argument set forth by Plaintiff on the basis that all such arguments were barred by the Appellant's admissions.(JA 563 and JA 564)  For example, with respect to Appellant's Sec. 1983 claim, the Appellant argued that several issues of material fact were in dispute because the evidence showed that: (1) Jones did not have a knife as evidenced by (a) the police department's failure to intake or produce any knife in discovery(JA 556) (b) the video evidence which did not show Jones using or holding a knife and (c) the only evidence of a  knife in Jones' hand was the officers' uncorroborated self-serving testimony[16]; (d) an officer actually had a folded knife which left his person and was discovered under Mr. Jones

---

[16]    In *Witt*, the District court concluded that the lack of neutral witnesses pitted the self-interested testimony of the troopers, who had one account of events, against the self-interested testimony of Witt, Gedon, and her daughter, who had a very different account, and that the poor quality of the video did not resolve these disputes. This finding, that genuine disputes of material fact preclude the grant of summary judgment on qualified immunity grounds, would seem to require us to dismiss the troopers' interlocutory appeal for lack of jurisdiction. *See e.g.*, *Johnson*, 515 U.S. at 319-20.  *Witt v. W. Va. State Police*, 633 F.3d 272, 276 (4th Cir. 2011)

body;(JA 403, 404)(*Supp.* WVSPR_1, Page 38)(*Id.* 37)(*Id.* 46)where (e) other officers witnessed the knife "fall out" during the incident.(JA 279 Ex.3, Neely Vid. 23:48:08-:13)  (2) Jones did not stab Officer Staub as evidenced by the facts that (a) there was no knife with which Mr. Jones could stab Officer Staub and (b) Officer Staub did not have any stab wounds nor was he treated for a knife wound according to Staub's medical examination(*Supp.* WVSPR_3, Page 71-74) and Staub's own testimony;(JA 405, Page 10-12)(JA 279 Ex.3, Herb Vid. 00:20:45-:48) (c) the conflicting statements by Officer Staub himself throughout his dashcam video(JA 279, Ex.3, Staub Vid. 23:48:10-:14)(*Id.* 23:56:27-:37)(*Id.,*:38-:46), (3) Jones did not refuse to drop the knife because he did not have a knife and he was being compliant with the police instructions to lay on the ground, as evidenced by the video of the incident and Officer Staub's own statements on his dashcam;(JA 279, Ex.3, Staub Vid. 00:00:43-:49) (4) Jones did not engage in unruly actions, did not attempt to evade the officers and did not fail to heed the officers' instructions as evidenced by the video indicating Jones was face down on the ground throughout the entire twenty-six seconds, beginning when Staub exited his vehicle until the police officers' began shooting Mr. Jones;(JA 279, Ex.3, Staub Vid. 23:46:41-:47:08) and (5) the dashcam videos demonstrate that Jones did not attempt any violent actions.  With respect to each of these arguments, the District Court held

that because all of the above matters were admitted, there were no disputed facts preventing a summary judgment ruling.(JA 564)

Given the Court's constant reliance on the admissions throughout its summary judgment opinion, it is clear that the deemed admissions effectively resolved the case and eliminated any possibility for a presentation on the merits. Accordingly, permitting the withdrawal or amendment of the deemed admissions would be the only possibly way to "facilitate the development of the case in reaching the truth" and "promote the presentation of the merits of the actions."[17]

With respect to the second prong of the Rule 36(b) analysis of whether the Defendants would have been prejudiced in maintaining or defending the action on the merits if the RFAs were admitted,[18] the Court in *McClanahan v. Aetna Life Ins.*

---

[17]     Rule 36(b) permits admissions to be withdrawn "on motion," and that plaintiff has not filed such a motion. However, "a formal motion is not always required. Instead, a withdrawal 'may be imputed from a party's actions' ...." *Petroff–Kline*, 557 F.3d at 293 (internal citations omitted)." *Webb v. Green Tree Servicing, LLC*, No. CIV.A. ELH-11-2105, 2013  WL 5442423 (D. Md. Sept. 30, 2013)    Here Plaintiff has twice timely filed in opposition to the Defendants Motion that the Requests be Deemed admitted, unequivocally made clear that it does not intend to admit wholesale the contentions in Defendants' Request for Admissions.  In light of the Fourth Circuit's "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)" this Court should find Plaintiffs' Motion/Briefs/Responses in Opposition to the Defendants' Motion to Deem are sufficient for purposes of Rule 36(b) purposes as a 'motion to withdraw or amend. *Compare Webb v. Green Tree Servicing, LLC*, No. CIV.A. ELH-11-2105, 2013 WL 5442423 (D. Md. Sept. 30, 2013)

[18]     "The prejudice contemplated by [Rule 36(b)] 'relates to the difficulty a party may face in proving its case' because of the sudden need to obtain evidence required to prove the matter that had been admitted." *Gutting*, 710 F.2d at 1314

*Co*, *reasoned* that "The prejudice referred to…derives from the difficulty the party opposing the motion to withdraw will face as a result of the sudden need to obtain evidence to prove the matter it had previously relied upon as answered." *McClanahan v. Aetna Life Ins. Co.*, 144 F.R.D. 316, 320 (W.D. Va. 1992) (citing 4A Jeremy C. Moore et al., *Moore's Federal Practice* at para. 36.08); *see Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1314 (8th Cir. 1983).   "Courts have recognized that, where a party all but conceded liability through its admission in a contested case, it is unlikely that the opposing party could have reasonably relied on the truth of the admission." *Branch Banking & Trust Co.*, 120 F.R.D. at 659 (citing *Westmoreland v. Triumph Motorcycle Corp.*, 71 F.R.D. 192, 193 (D. Conn. 1976)). In *Westmoreland* the court notes:

> It is unlikely that the plaintiff could reasonably have believed that the defendant intended to admit liability in this contested action. And if he did rely on that assumption, this court is loath to reward what would have been an unreasonable reliance in order to glorify technical compliance with the rules of civil procedure. Had the plaintiff been able to demonstrate an actual hardship caused by the defendant's negligence, i.e., had he shown that he was now unable to obtain vital witnesses, the result would, of course, be different."

---

(quoting *Brook Vill. N. Assoc. v. Gen. Elec  Co.*, 686 F.2d 66, 70 (1st Cir. 1982) ("The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.")). *In re Harper*, No.ADV 12-80232-DD, 2013 WL 1909549 (Bankr. D.S.C. May 7, 2013) Rule 36(b)

*Westmoreland*, 71 F.R.D. at 193; *see also Bergemann v. United States*, 820 F.2d 1117, 1121 (10th Cir. 1987) (no prejudice in withdrawal of response since plaintiff knew that defendants challenged the issue).

Given that the responses were filed only two days after the deadline for the RFAs, and the Plaintiff objected twice to the motion to deem the RFAs admitted, and the Plaintiff and the Defendants continued to otherwise prepare for trial, the Defendants would have suffered no prejudice from the Court's allowance of the Defendants' withdrawal of the admissions. The Defendants did not suffer any delay with respect to their preparation for trial, did not lose access to any witnesses or other evidence necessary at trial, and did not in any other way rely on the deemed admissions to their detriment. In fact, when the Plaintiff filed its response to the Requests for Admission on January 29, 2014, there were nine months left in discovery.(JA 39) Furthermore, had Defendants' relied on the deemed admissions(JA 161), such reliance would have been unfounded as "It is unlikely that the [Appellees] could reasonably have believed that the [Appellant] intended to admit [fault] in this contested action." *Id.*

Since withdrawal of the deemed admissions would have clearly promoted the presentation of the merits of the action and would not have resulted in any prejudice to the Defendants, the District Court should have exercised its discretion under Rule 36(b) favorably and permit the withdrawal of Plaintiff's deemed

admissions.  The District Court's failure to do so constituted an abuse of discretion which should be reversed.

## II.    The District Court Erred in Granting Appellees' Summary Judgment Motion Based on Requests for Admissions Deemed Admitted in Error.

The District Court's granting of the Defendants' motion for summary judgment is reviewed in this Court de novo. *Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 (4th Cir. 1993); *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir. 1990).  In conducting this review, this Court is to also apply the same legal standards as the District Court.  *Ramos v. Southern Maryland Elect.Co–op., Inc.*, 996 F.2d 52, 53 (4th Cir. 1993).  The District Court should only grant a motion for summary judgment where there is no genuine dispute of material fact such that the moving party is entitled to summary judgment as a matter of law.  *See Fed. R. Civ. P. 56(c)*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 236-37 (4th Cir. 1995).

Because the District Court abused its discretion in not permitting the withdrawal of the admissions or in failing to consider the factors set forth under Rule 36(b), the District Court continued reliance on the admissions constitutes reversible error.  Judge Groh's opinion is premised by specifically stating that "Many material facts in this case are undisputed because a magistrate court order

32

deemed admitted requests for admission submitted to the Estate."(JA 552).

Although the District Court notes that the "record independently supports the facts

admitted by the Estate," this statement only indicates that there was some evidence

on the record which independently corroborated the admissions, i.e. the police

officers' self-serving testimony,[19] and not that the record wholly support the facts

admitted by the Estate.  Judge Groh's opinion does not hold that the summary

judgment decision stands without the benefit of the conclusory effect of the

Estate's deemed admissions.

Indeed, in each of the District Court's rulings, the rationale explicitly relies

upon the Estate's admissions as releasing the court from any obligation to consider

whether the evidence creates any genuine dispute as to an issue of material fact[20].

---

[19]    In *Witt*, the District Court further found that "the credibility of testimony"
and "the reliability of documentary evidence" in this case presented genuine
disputes as to these "crucial facts." *Witt*, No. 3:08-cv-183, 2009 U.S. Dist. LEXIS
130641 at *17. The district court concluded that the lack of neutral witnesses pitted
the self-interested testimony of the troopers, who had one account of events,
against the self-interested testimony of Witt, Gedon, and her daughter, who had a
very different account, and that the poor quality of the video did not resolve these
disputes. This finding, that genuine disputes of material fact preclude the grant of
summary judgment on qualified immunity grounds, would seem to require us to
dismiss the troopers' interlocutory appeal for lack of jurisdiction. *See e.g.*,
*Johnson*, 515 U.S. at 319-20.  *Witt v. W. Va. State Police*, 633 F.3d 272, 276 (4th
Cir. 2011)

[20]    The *Witt* Court reasoned that the documentary evidence in that case—the
dashboard video—does not "blatantly contradict[ ]" Witt's account of the facts;
therefore, it "does not establish that the officers were entitled to summary
judgment." *See York v. City of Las Cruces*, 523 F.3d 1205, 1210-11 (10th Cir.
2008) (refusing to direct grant of summary judgment when an audio tape recorded

**A.    The District Court Erred in Granting Summary Judgment Dismissing Appellant's Section 1983 Claims Against the Officers for Use of Excessive Force.**

Section 1983 provides a private civil claim for a State action that deprives a citizen of a right, privilege, or immunity secured by the Constitution or federal law. 42 U.S.C. § 1983.  A claim that a law enforcement officer used excessive force in the course of an arrest or investigatory stop invokes an individual's Fourth Amendment right to be free from unreasonable searches and seizures.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  Courts are required to conduct an objective reasonableness analysis to determine whether an officer violated this right.  *Id.* at 397.    The reasonableness inquiry requires examination of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396-97.

---

"only part of the incident involving the [plaintiff] and the police officers"); *Blaylock*, 504 F.3d at 414 (holding documentary evidence did not establish that plaintiff's version of events was "blatantly and demonstrably false"); see also *United States v. Hughes*, 606 F.3d 311, 319-20 (6th Cir. 2010) (finding Scott inapplicable, in determining probable cause for search, when documentary evidence made party's account of disputed fact merely "'unlikely,'" rather than "utterly discredited" (internal quotation omitted)). Moreover, the troopers' attempt to "rehash[ ] the factual dispute below" provides no basis for interlocutory appeal of the district court's order [278] denying summary judgment on qualified immunity grounds. *Iko*, 535 F.3d at 235.  *Witt v. W. Va. State Police*, 633 F.3d 272, 277-78 (4th Cir. 2011)

Prior to addressing the Estate's Section 1983 Claims against each of the individual officers, the District Court notes that, as a preliminary matter, because of the Estate's admission, the District Court will not consider the Estate's arguments that the evidence demonstrates that Mr. Jones did not have a knife, did not stab officer Staub, did not ignore police officers' orders to drop the knife, did not engage in unruly acts, did not heed the Officer's instructions and did not take any violent action against the officers or other persons. With such arguments and evidence ignored, the Court concluded that each of the officers' use of deadly force was objectively justified and reasonable.

Because the District Court's summary judgment dismissal of the Estate's Section 1983 claims relied almost exclusively upon the Estate's admissions, the District Court abused its discretion in failing to consider Rule 36(b) factors when refusing to allow the late response as a withdrawal of those admissions, the summary judgment should be reversed and remanded to the district court for further consideration because this issue is not ripe for this Court's decision

**B.      The District Court Erred in Granting Summary Judgment Dismissing Appellant's Section 1983 Claims Against the City**

The District Court dismissed the Appellant's Section 1983 Claim against the City due to the RFAs being deemed admitted. The District Court found that the officers did not use excessive force based on the aforementioned reasons cited

above.   The dismissal of the Section 1983 Claims constitutes reversible error and this Court should reverse and remand the District Court's summary judgment as to Appellant's Section 1983 Claims against Martinsburg, West Virginia.

### C.    The District Court Erred in Granting Summary Judgment Dismissing Appellant's Negligence and Wrongful Death Claims Against the Officers

The District Court dismissed the Appellant's wrongful death and Negligence claims against the officers "because the officers' actions did not violate the Fourth Amendment or Fourteenth Amendment."(JA 571)   This is a domino effect, resulting in  the District Court's conclusion that "the Estate cannot establish [the officers] engaged in wrongful or negligent conduct." *Id.* Since the District Court's dismissal of the Estate's wrongful death claims was based on the court's erroneous summary judgment ruling on the issue of whether the officers use of deadly force violated Section 1983, the ruling on the Plaintiff's claim for wrongful death should be reversed and remanded.

### <u>CONCLUSION</u>

For the reasons set forth above, the Estate of Wayne A. Jones, by Robert L. Jones and Bruce A. Jones, Administrators of the Estate of Wayne A. Jones, respectfully submits that the District Court's Order of October 15, 2014, granting the Appellee' Summary Judgment should be reversed on all counts and this matter should be remanded so it may proceed to trial and be decided on the merits.

## **REQUEST FOR ORAL ARGUMENT**

Appellant(s) request Oral Argument and believe that such will assist this Court in its consideration of these issues.

Respectfully Submitted

Date:  February 6, 2015

/s/ Rocco DeLeonardis
Rocco DeLeonardis, VSB 39761
Consumer Law, PLLC
11480 Sunset Hills Road
Reston, Virginia 20190
Telephone:(703) 883-2020
Facsimile: (703)995-0447
email:rocco@virginialawplc.com.com
*Attorney for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
       28.1(e)(2) or 32(a)(7)(B) because:

       [ X ] this brief contains [*9,900*] words, excluding the parts of the brief
       exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

       [     ] this brief uses a monospaced typeface and contains [*state the number
       of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
       32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
       32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

       [ X ] this brief has been prepared in a proportionally spaced typeface using
       [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

       [     ] this brief has been prepared in a monospaced typeface using [*state
       name and version of word processing program*] with [*state number of
       characters per inch and name of type style*].


Dated: <u>February 6, 2015</u>          <u>/s/ Rocco DeLeonardis</u>
                                          *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 6th day of February, 2015, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Philip W. Savrin
> FREEMAN MATHIS & GARY, LLP
> 100 Galleria Parkway, Suite 1600
> Atlanta, Georgia  30339
> (770) 818-1405
>
> *Counsel for Appellees*

I further certify that on this 6th day of February, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ Rocco DeLeonardis
*Counsel for Appellant*
